24-10900

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆

THOMAS O'NEAL,

*Plaintiff-Counter Defendant-Appellant,*

—v.—

AMERICAN SHAMAN FRANCHISE SYSTEMS, INC., CBD AMERICAN SHAMAN, LLC, SHAMAN BOTANICALS, LLC, SVS ENTERPRISES, LLC, a Kansas limited liability company, STEVEN VINCENT SANDERS, II, an individual, et al.,

*Defendants-Counter Claimants-Appellees,*

FLORIDA SHAMAN PROPERTIES, LLC et al.,

*Defendants.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

## BRIEF FOR PLAINTIFF-COUNTER DEFENDANT-APPELLANT

KEVIN H. GRAHAM
LAW OFFICES OF KEVIN H. GRAHAM
3159 Lake Ellen Drive, Suite 100
Tampa, Florida 33618
(813) 240-0107

*Attorney for Plaintiff-Counter
Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

In accordance with Rule 26.1, Fed.R.App.P., and Rule 26 of the Rules of the United States Court of Appeals for the Eleventh Circuit, undersigned counsel for Appellant gives notice of the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

Thomas J. O'Neal, Appellant

Kevin H. Graham, Counsel for Appellant

CBD American Shaman, LLC, Appellee

American Shaman Franchise Systems, LLC, Appellee

SVS Enterprises, LLC, Appellee

Shaman Botanicals, LLC, Appellee

Steven Vincent Sanders, II., Appellee

Francis Kalaiwaa, Appellee

Joel M. Aresty, counsel for Appellees

Joel M. Aresty, P.A., counsel for Appellees

Nicholas J. Porto, counsel for Appellees

The Porto Law Firm, counsel for Appellees

Stephen J. Moore, counsel for Appellees

Krigel & Krigel, P.C., counsel for Appellees

Hon. Kathryn Kimball Mizell, United States District Judge

Hon. Amanda Arnold Sansone, United States Magistrate Judge

## STATEMENT REQUESTING ORAL ARGUMENT

Mr. O'Neal requests oral argument.  While Mr. O'Neal submits that the errors in the district court's entry of judgment on the pleadings and summary judgment, and the Magistrate Judge's denial of his motion to amend his supplemental complaint and amend his affirmative defenses to the counterclaim are apparent, the briefs may not answer all of the Court's questions, and Mr. O'Neal welcomes the opportunity to do so.

## TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT...................... C-1

STATEMENT REQUESTING ORAL ARGUMENT ..................... i

TABLE OF AUTHORITIES................................................ iv

STATEMENT OF JURISDICTION........................................ vii

INTRODUCTION............................................................ 1

STATEMENT OF THE ISSUES ............................................ 3

STATEMENT OF THE CASE ............................................... 5

    I.   COURSE OF PROCEEDINGS AND DISPOSTION BELOW ................................................................ 5

    II.  STATEMENT OF FACTS............................................ 9

    III. ORDERS PRESENTED AND STANDARD OF REVIEW ................................................................ 20

        A. Judgment on the Pleadings [Doc. 230]......................... 20

        B. Summary Judgment [Doc. 415] ................................. 22

        C. Amendment Order [Doc. 273] ................................. 23

SUMMARY OF ARGUMENT.............................................. 25

ARGUMENT................................................................ 29

    A. The District Court Erred As a Matter of Law By Holding That the Release In the Settlement Agreement [Doc. 188-1] Settling Mr. O'Neal FLSA Claim Is Enforceable Without the Release Being Scrutinized For Fairness and Judicially Approved As Mandated By *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982) ....................... 29

PAGE

B. The District Court Erred By Denying Mr. O'Neal's Motion
For Summary Judgment.................................................. 37

C. The Magistrate Judge Abused Her Discretion By Denying
Mr. O'Neal's Motion To Amend Pleadings [Doc. 272] .......... 46

CONCLUSION ............................................................... 52

CERTIFICATE OF COMPLIANCE ........................................ 54

CERTIFICATE OF SERVICE.............................................. 54

## TABLE OF AUTHORITIES

PAGE(S)

## Cases

*All Year Cooling & Heating, Inc. v. Burkett Properties, Inc.*,
    357 So.3d 131, Fla. 4th DCA 2023 ..................................... 37

*Arrfaga v. Fla. Pacific Farms, L.L.C.*,
    305 F.3d 1228 (11th Cir. 2002) ......................................... 23

*Baker v. G&S Electrical of Northwest Florida, LLC*,
    2023 WL 10554725 (N.D. Fla. 2023) ................................... 35

*Baugh v. RNMG, Inc.*,
    2021 WL 4155403 (M.D. Fla. 2021) .................................... 33

*Boigris v. EWC P&T, LLC*,
    7 F.4th 1079 (11th Cir. 2021) .......................................... 23

*Caracol Television S.A. v. Telemundo Television Studios, LLC*,
    2022 WL 202546 (11th Cir. 2022) ................................. 23, 45

*Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*,
    263 F.3d 1304 (11th Cir. 2001) ......................................... 25

*Dear v. Q Club Hotel, LLC*,
    933 F.3d 1286 (11th Cir. 2019) ................................... 44, 45

*Dumas v. 1 Able Realty, LLC*,
    2018 WL 1791534, *report and recommendation adopted*,
    2018 WL 1791535 (M.D. Fla. 2018) ............................... 33, 34

*Eiber Radiology, Inc. v. Toshiba America Med. Systems, Inc.*,
    673 Fed.Appx. 925 (11th Cir. 2016) ................................... 46

*Environmental Protection Commission of Hillsborough County, Florida
    v. Mercedes Benz USA, LLC*,
    2023 WL 4678978 (11th Cir. 2023) ........................... 27, 48, 52

*Exantus v. Fiesta Restaurant Group, Inc.*,
    2023 WL 8720292 (S.D. Fla. 2023) ..................................... 35

*F.T.C. v. Leshin*,
    618 F.3d 1221 (11th Cir. 2010) ......................................... 23

PAGE(S)

*Foley v. Orange County*,
2024 WL 49134 (11th Cir. 2024) ......................................... 25

*Healthcomp Evaluation Serv. Corp. v. O'Donnell*,
817 So.2d 1095 (Fla. 2d DCA 2002) .................................... 34

*Henkle v. Monkey in Paradise, LLC*,
2023 WL 5961532 (S.D. Fla. 2023) ..................................... 35

*In re Hubbard*,
803 F.3d 1298 (11th Cir. 2015) .................................... 25, 36

*Lynn's Food Stores, Inc. v. United States Department of Labor*,
679 F.2d 1350 (11th Cir. 1982) ..................................... *passim*

*Michelson v. Secy., Dept. of Army Agency*,
860 Fed.Appx. 677 (11th Cir. 2021) .............................. 46, 47

*Moreno v. Regions Bank*,
729 F.Supp.2d 1346 (M.D. Fla. 2010) ............................ 32, 33

*Nall v. Mal-Motels, Inc.*,
723 F.3d 1304 (11th Cir. 2013) ............................... 25, 31, 36

*Premier Ins. Co. v. Adams*,
632 So. 2d 1054 (Fla. 5th DCA 1994) ................................. 43

*Prestige Ins. Group, LLC v. Allstate Ins. Co.*,
2024 WL 621433 (11th Cir. 2024) ...................................... 40

*Rakip v. Paradise Awnings Corp.*,
514 Fed.Appx. 917 (11th Cir. 2013) .............................. 30, 31

*Rodriques v. CNP of Sanctuary, LLC*,
523 F.App'x 628 (11th Cir. 2013) ...................................... 36

*Rollins v. Butland*,
951 So. 2d 860 (Fla. 2d DCA 2006) ................................. 26, 45

*Sabal Trail Transm., LLC v. 18.27 Acres of Land in Levy County*,
59 F.4th 1158 (11th Cir. 2023) ........................................ 21

*Samara v. Taylor*,
38 F.4th 141 (11th Cir. 2022) ......................................... 21

PAGE(S)

*Silva v. Miller*,
    307 Fed.Appx. 349 (11th Cir. 2009) ........................... 31, 32, 35

*Stephenson v. SunTrust Bank*,
    2013 WL 12392462, *report and recommendation adopted*, 2013
    WL 12388665 (M.D. Fla. 2013) ............................................ 33

*Ta Chen International., Inc v. Benada Aluminum Products, LLC*,
    2021 WL 7541515 (M.D. Fla. 2021) ..................................... 37

*Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000
    v. Expeditors Korea Ltd.*,
    882 F.3d 1033 (11th Cir. 2018) ............................................ 23

*United States v. Garcon*,
    54 F.4th 1274 (11th Cir. 2022), *cert. dismissed*, 144 S.Ct. 339 ......... 39

*Wolff v. Royal Am. Mgt., Inc.*,
    545 Fed.Appx. 791 (11th Cir. 2013) ..................................... 30

## Statutes

29 U.S.C.A. § 201, et seq., Fair Labor Standards Act ("FLSA") ... *passim*

Florida's Private Whistleblower Act, Section 448.102 ..................... 5

Florida's Security in Communications Act, Section 934.101,
    *et. seq.* ............................................................................. 10

## Rules

Fed.R.Civ.P. 41(a)(1)(A)(ii) ................................................. 5, 14

## Regulations

16 C.F.R. § 436.5 .............................................................. 13, 14

## Other Authorities

*Black's Law Dictionary* (11th ed. 2019) ..................................... 47

*Webster's Third New Int'l Dictionary* ........................................ 39

## STATEMENT OF JURISDICTION

There is complete diversity between the parties and the district court had subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332. This is an appeal of a final judgment and incorporated judgment on the pleadings, summary judgment, and denial of a motion to amend pleadings and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The final judgment [Doc. 415] was entered on March 25, 2024, and disposed of all the parties' claims. Mr. O'Neal's Notice of Appeal [Doc. 416] was filed on March 26, 2024.

## INTRODUCTION

This appeal arises from a fraudulently induced settlement agreement intended to resolve an employee's claims against his former employers for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 201, et seq. The settlement agreement includes a pervasive release and waiver and provides that the employee "assumes the risk of any and all claims for damages which exist" as of the date of the settlement agreement "but of which the [the employee] does not know or suspect to exist."  Joint Statement of Facts [Doc. 388] at Par. 1.[1]

The district court explicitly rejected *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350 (11th Cir. 1982), stating that "(t)here is little, if any, statutory basis for a requirement that the district court approve a settlement," "there is no statutory reason to think the FLSA protects non-FLSA claims simply because they are included in a joint settlement," and suggested that the *Lynn's Food* doctrine "is a matter worth reconsidering" by this Court. Judgment on the Pleadings [Doc. 230] at p. 6; and fn. 2.  The district court's decision is contrary to law and is due to be reversed.

---

[1] Mr. O'Neal refers to court documents in this Brief and in the Appendix by docket number ("Doc. __").

This appeal also presents the question of whether the employers are precluded from enforcing the settlement agreement for the additional reason that the employers materially breached the settlement agreement confidentiality section prior to the employee filing his supplemental proceedings against them. The settlement agreement provides that the terms of the settlement may not be disclosed to "anyone" without "prior written notice" being provided to the non-disclosing party's attorney so that action can be taken to prevent or minimize the disclosure.

It is undisputed that the employers failed to provide the required prior written notice before disclosing the terms of the settlement agreement in publicly accessible court records three (3) weeks prior to the employee's filing of his supplemental proceedings against the employers.  The district court failed to interpret the confidentiality covenant in accordance with its plain meaning and entered summary judgement against the employee on the employers' counterclaim for breach of the release, waiver, and assumption of the risk provisions in the settlement agreement.

Lastly, this appeal raises the issue of whether the magistrate judge abused her discretion in denying the employee's request to amend his supplemental complaint and his answer to the employers' counterclaim initially filed thirty (30) days after the district court's entry of judgment on the employee's pleadings.

The employee sought to amend his supplemental pleadings against the employers to allege, *inter alia*, a cause of action for equitable recission of the settlement agreement and to amend his affirmative defenses to the employers' counterclaim to include, *inter alia*, fraudulent inducement to contract and related defenses.

The magistrate judge determined that the employee's motion "raised at least the specter" of "undue delay, bad faith, and dilatory motive" and that his proposed cause of action for recission of the settlement agreement and affirmative defenses were factually implausible and futile. The denial of the employee's sole request to amend his pleadings resulting in the effective dismissal, with prejudice, of his supplemental proceedings against the employers is an abuse of discretion, contrary to law, and is due to be reversed. Amendment Order [Doc. 273] at p. 12.

## STATEMENT OF THE ISSUES

**Issue No. 1.** Did the district court error as a matter of law by holding that the release, waiver, and assumption of the risks sections in the Settlement Agreement [Doc. 188-1] [Doc. 188-1] extracted from Mr. O'Neal by his former employers under the guise of settling his FLSA claims bars his fraudulent transfer action (and other related state law claims) against the former employers

without the release being "scrutinize(ed) for fairness" as required by *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982)?

**Issue No. 2.**  Did the district court error as a matter of law by holding that the failure to   provide Mr. O'Neal's attorney "prior written notice" before disclosing the terms of the Settlement Agreement [Doc. 188-1] (and a partially redacted copy of the document itself) in the publicly accessible records of the United States District Court for the Western District of Missouri (W.D. Mo.) did not constitute a prior breach of Section 4.1 ("Confidentiality") rendering Section 2.1 ("Mutual Release") and Section 6.1 ("Non-Disparagement") of the Settlement Agreement [Doc. 188-1] unenforceable against Mr. O'Neal?

**Issue No. 3.** Did the Magistrate Judge abuse her discretion and error as a matter of law by determining that Mr. O'Neal's filing of his motion to amend his pleadings "at least raised the specter" of "undue delay, bad faith, and [acting with a] dilatory motive" and that Mr. O'Neal's proposed cause of action for recission of the Settlement Agreement [Doc. 188-1] and proposed affirmative defenses to include, *inter alia*, fraudulent inducement to contract, are facially implausible and futile warranting the denial [Doc. 273] of the motion and the effective dismissal, with prejudice, of Mr. O'Neal's supplemental proceedings? Amendment Order [Doc. 273] at p. 7.

## STATEMENT OF THE CASE

### I.    COURSE OF PROCEEDINGS AND DISPOSTION BELOW

On April 22, 2020, Mr. O'Neal filed a Complaint [Doc. 1] against Appellees, American Shaman Franchise System, LLC ("Shaman Franchise"), CBD American Shaman, LLC, and Shaman Botanicals, LLC (collectively, "Employers"), for violations of the FLSA, breach of contract, violation of Florida's Private Whistleblower Act, Section 448.102, *Florida Statutes*, and unjust enrichment.  Mr. O'Neal also sued Brandon Carnes ("Carnes"), and his single member Florida limited liability company, Florida Shaman Properties, LLC ("Florida Shaman") for tortiously interfering with his contract with the Employers and for unjust enrichment.[2]  *Id.*  Carnes and Florida Shaman failed to respond and Clerk's defaults [Doc. 26 and 44] were entered against both.

Mr. O'Neal and the Employers agreed to a settlement amount and filed a Joint Notice of Resolution [Doc. 65] ("Joint Notice") on April 21, 2021, advising the district court that the parties were in the process of drafting a settlement agreement and would file a Fed.R.Civ.P. 41(a)(1)(A)(ii) Stipulation of Dismissal With Prejudice "upon completing that agreement." *Id.* at p. 1.  The terms of the settlement agreement were finalized on May 14, 2021, and a

---

[2] Mr. O'Neal also sued one of Carnes' business associate, Katelyn Sigman ("Sigman"). Sigman filed for bankruptcy protection and Mr. O'Neal discontinued all proceedings against her.

Stipulation of Dismissal [Doc. 72] of Mr. O'Neal's claims against the Employers was filed the same day. A default judgment [Doc. 77] in the amount of $608,400.00 was entered against Carnes and Shaman Florida, jointly and severally, on August 18, 2021.

Mr. O'Neal filed his initial Supplemental Complaint in Aid of Execution [Doc. 135] against the Employers and the other Appellees (collectively "Shaman Parties") on December 20, 2021, and an Amended Supplemental Complaint ("Amended Supplemental Complaint") [Doc.161] on January 14, 2021. The Amended Supplemental Complaint [Doc. 161] asserts claims against the Shaman Parties for violations of fraudulent transfer laws, conversion, and related claims, but did not attach, mention, or implicate the settlement agreement.

The Shaman Parties' answered and filed a two-count counterclaim [Doc. 188]. Count One requests a declaratory judgment that "(1) the settlement agreement is fair, reasonable and enforceable, and (2) the mutual general release in the settlement agreement bars all claims O'Neal asserts in this supplemental proceeding against the Shaman Defendants." *Id.* at Par. 37. Count Two alleges that "(t)he release provision in the Settlement Agreement [Doc. 188-1] constitutes a covenant not to sue" and that Mr. O'Neal breached the release and the non-disparagement provision in the Settlement

6

Agreement [Doc. 188-1] [Doc. 188-1] by filing his supplemental proceedings. *Id.* at 43-46.

The Shaman Parties then moved [Doc. 177] for retroactive judicial approval of the parties' settlement of Mr. O'Neal's FLSA and state law claims, and for judgment on the pleadings [Doc.184]  on Mr. O'Neal's Amended Supplemental Complaint [Doc.161].  On May 23, 2022, the magistrate judge issued her Report and Recommendation (R&R) [Doc. 213] recommending that both motions be denied.  The Shaman Parties filed an Objection [Doc. 224], which the district court granted in part, and denied in part.

The district court's Judgment on Pleadings [Doc. 230] accepted the magistrate judge's recommendation that the motion [Doc. 177] for retroactive judicial approval of the FLSA settlement be denied, but granted the Objection [Doc. 224] as to the Shaman Parties' motion [Doc. 184] for judgment on the pleadings.  The district court ruled that the release, waiver, and assumption of the risk clauses in the Settlement Agreement [Doc. 188-1] bar Mr. O'Neal's state law claims and dismissed his Amended Supplemental Complaint [Doc.161]. Mr. O'Neal filed a motion [Doc. 235] for reconsideration which was summarily denied by Endorsed Order [Doc. 240] on August 10, 2022.

On August 11, 2021, Mr. O'Neal filed his initial motion [Doc. 241] to amend his supplemental complaint [Doc. 241-1] to, *inter alia*, attach a copy of

the contract memorializing the fraudulent transfer that had recently been obtained in discovery conducted in the W.D. Mo., and allege an additional cause of action for rescission of the Settlement Agreement [Doc. 188-1]. Mr. O'Neal also filed his initial motion [Doc. 243] to amend his answer and affirmative defenses to the counterclaim [Doc. 188] the following day to assert fraudulent inducement.

After waiting more than five (5) months for a ruling, Mr. O'Neal withdrew his initial motions [Doc. 241 and 243] and filed a substitute motion ("Substituted Motion") [Doc. 272] to amend both pleadings on January 23, 2023. *Id.* at p. 1. ("The instant Motion supersedes and renders moot O'Neal's undecided" initial motions [Doc. 241 and 243].). The Substituted Motion [Doc. 273] attached a proposed amended complaint ("Proposed Amended Complaint") [Doc. 272-2]]. The Magistrate Judge denied [Doc. 273] the Substituted Motion [Doc. 272] and effectively dismissed, with prejudice, of Mr. O'Neal's supplemental proceedings against the Shaman Parties.

Finally, the parties filed cross-motions for summary judgment [ Doc. 385 and 390] as to the Shaman Parties' counterclaim [Doc. 188]. The magistrate judge's Report and Recommendation ("R&R") [Doc. 411] recommended that Mr. O'Neal's cross-motion for summary judgment [Doc. 385] should be granted

as to on Count One (request for declaratory judgment), but denied as to Count Two for breach of the Settlement Agreement [Doc. 188-1], and that the Shaman Parties' cross-motion [Doc. 390] for summary judgment as to Count Two should be granted. [Doc. 410] at pp. 21-22. Mr. O'Neal filed an Objection [Doc. 411].

The district court denied [Doc. 415] the Objection [Doc. 411], adopted the magistrate judge's R&R [Doc. 411], granted summary judgment in favor of the Shaman Parties and against Mr. O'Neal, and awarded the Shaman Parties their attorney fees for breach of the release and nominal damages for breach of the non-disparagement section of the Settlement Agreement [Doc. 188-1].

## II.    STATEMENT OF FACTS

Mr. O'Neal entered into an agreement with the Employers in August of 2018 to develop, open, and operate company-owned "American Shaman CBD" stores in the Florida market ("Development Contract"). Proposed Amended Complaint [Doc. 272-2] at Par. 22-24. Mr. O'Neal opened his first company-owned "American Shaman CBD" store in Tampa, Florida ("Tampa Store") on December 15, 2018. Proposed Amended Complaint [Doc. 272-2] at Par. 22.

At the time of the store opening, Carnes owned and operated "American Shaman CBD" franchised stores in multiple states, including in the Tampa-Sarasota, Florida market, pursuant to a franchise agreement with Shaman Franchise executed on April 18, 2018. *Id.* at Par. 27 In mid-December of 2018,

Carnes traveled to the Tampa Store, spoke with Mr. O'Neal, and evidenced acute displeasure upon learning that a company-owned "American Shaman CBD" store had been opened in the same Tampa-Sarasota, Florida market as his franchised stores. *Id*. at Par. 39-44.

On January 17, 2019, Carnes (and a business associate) appeared at the Tampa Store unannounced and unilaterally installed a second security camera which included a listening device ("Listening Equipment") that allowed third parties to intercept private conversations between customers and sales personnel and transmit those oral communications over the internet without the knowledge of the affected customers. *Id*. In the days following the installation of the Listening Equipment, Mr. O'Neal investigated and confirmed that the Listening Equipment potentially violated Florida's Security in Communications Act, Section 934.101, *et. seq.*, *Florida Statutes*. *Id*. at Par. 53-58. On January 24, 2019, Mr. O'Neal emailed the Employers informing them of his concerns and advising that he was unplugging the Listening Equipment pending receipt of instructions. *Id*. The Employers terminated Mr. O'Neal's Development Contract several hours later and Florida Shaman began operating the Tampa Store the following day. *Id*.

Mr. O'Neal commenced his lawsuit against the Employers, Carnes, and Florida Shaman on April 22, 2020 [Doc. 1]. Several months later, Carnes began

10

requesting that the Employers advance him substantial amounts of cash to cover payroll and other operating expenses for his franchised stores, and the Employers agreed to do so. Declaration of Leigh Geither ("Geither Declaration") [Doc. 152-1] at Par. 3-5.[3] By August 2020, the Shaman Parties had spent $130,000.00 in payments to Carnes' various creditors. Id.; and Proposed Amended Complaint [Doc. 272-2] at Par. 70-75.

On October 20, 2020—approximately five (5) months after Mr. O'Neal commenced his lawsuit and while all of his claims were pending against the Shaman Parties, Carnes and Florida Shaman—the Shaman Parties acquired, secretly and without Mr. O'Neal's knowledge, twenty-three (23) of Carnes' franchised stores in violation, *inter alia*, of fraudulent transfer laws, and Carnes absconded with the sales proceeds. *Id.* See Agreement [Doc. 272-2, Exhibit 1.

A Clerk's default [Doc. 26] was entered against Florida Shaman on August 14, 2020, and against Carnes [Doc. 44] on February 25, 2021, and Mr. O'Neal moved [Doc. 58] for default judgment against Carnes and Florida Shaman, jointly and severely, for damages in excess of $600,000.00 on March 18, 2021. The parties' engaged in an unsuccessful mediation [Doc. 68] on April

---

[3] Liegh Geither serves as the Shaman Parties Chief Financial Officer and her Declaration was filed by the Shaman Parties in the district court in opposition to Mr. O'Neal's motion [Doc. 131] for a preliminary injunction.

16, 2021, but continued settlement negotiations over the following three (3) weeks.

Due to the impending default judgment against Carnes and Florida Shaman, the Shaman Parties' conspiracy to fraudulently transfer Carnes' assets became dependent on the procurement of a contractual release from Mr. O'Neal that: (1) exonerated the Shaman Parties and all their affiliated entities and persons (including attorneys) from liability arising from the fraudulent transfer of the franchised stores and the civil conspiracy to defraud Mr. O'Neal; and (2) would ensure that the voidable title received from Carnes for the transferred assets was not subject to being subordinated to Mr. O'Neal's superior judgment lien and possessory rights upon the entry of the Mr. O'Neal's impending default judgment.

Mr. O'Neal knew that the only known assets owned by Carnes from which he could collect his impending default judgment were his franchised stores. As a consequence, Mr. O'Neal monitored Shaman Franchise's publicly issued franchise disclosure documents ("FDDs") on an ongoing basis during the course of the litigation. *Id.* The Employers recognized that Mr. O'Neal would not agree to a settlement agreement that exonerated them from liability for their fraudulent and deceitful conduct if Shaman Franchise truthfully recited in its FDDs that the Shaman Parties had secretly acquired Carnes' franchised stores.

12

Shaman Franchise's FDD, issued April 30, 2020 ("2020 FDD"), stated that Carnes owned and operated twenty-six (26) "American Shaman CBD" franchised stores in multiple states, including in the Tampa-Sarasota, Florida market, and that he owned more than ten percent (10%) of Shaman Franchise's total franchisee locations. *Id.* Pursuant to 16 C.F.R. § 436.5 ("Franchise Rule"), issued by the United States Federal Trade Commission (FTC), Shaman Franchising is required to publicly issue a FDD on an annual basis, and in the event of any material changes in the operation of its franchise system, must publicly issue a written revision to its FDD describing the changes within "within a reasonable time" after the close of the calendar quarter in which the change occurred. Proposed Amended Complaint [Doc. 272-2] at Par. 66-67.

The acquisition of Carnes' franchised stores was a material change in the Shaman Franchise's franchise system as defined by the Franchise Rule and Shaman Franchise was required to issue a public revision to its 2020 FDD "within a reasonable time" after the close of its fiscal quarter ending December 31, 2020, and state that Carnes' was no longer the owner of twenty-six (26) franchised stores as recited in its 2020 FDD. The Shaman Parties caused Shaman Franchise to violate the Franchise Rule and not publish a written revision to its 2020 FDD as part of their conspiracy to fraudulently transfer Carnes' assets to themselves and defraud Mr. O'Neal. *Id.*

13

Shaman Franchise was also required by the Franchise Rule to publish its annual FDD on or before April 30, 2021 ("2021 FDD"), and truthfully disclose all franchisee locations that had been "terminated, canceled, not renewed, or otherwise voluntarily or involuntarily ceased to do business under a franchise agreement" during Shaman Franchise's fiscal year ending December 31, 2020. Franchise Rule at Item 20 Table No. 5 (iv)(5). The Shaman Parties caused Shaman Franchise to falsely state in its 2021 FDD that only three (3) of Carnes' franchised stores had "ceased to do business" during 2020 when in fact, twenty-three (23) of Carnes franchised stores had "ceased to do business under a franchise agreement." *Id*.

Mr. O'Neal agreed to a settlement amount and on April 21, 2021, a Joint Notice [Doc. 65] was filed informing the district court that the parties "are in the process of drafting a confidential agreement to memorialize that resolution ...[and] will file a Fed.R.Civ.P. 41(a)(1)(A)(ii) Stipulation of Dismissal With Prejudice upon completing that agreement." *Id*. at p. 1 (brackets and emphasis added).

Mr. O'Neal tendered the following language to the Employers for inclusion in the settlement agreement during the course of negotiations:

> 7.12 **Limited Release**. Notwithstanding anything in this Agreement to the contrary, the release included in this

> Agreement shall not include any limitation on O'Neal's
> right to prosecute any and all equitable or legal claim against
> the Shaman Companies arising out of any transfer of assets,
> directly or indirectly, by SVS Enterprises, LLC, a Nevada
> limited liability company, and/or any of the Shaman
> Companies to Brandon Carnes, Katelyn Sigman, and/or
> Florida Shaman Properties, LLC, in violation of Nevada
> Uniform Fraudulent Act, N.R.S. 112.140, et seq., Missouri
> Uniform Fraudulent Act, V.A.M.S. 428.005, et. seq.,
> and/or any other applicable creditor rights law.

See Counterclaim [Doc. 188], Exhibit 1. The Employers declined to accept the tendered language for the stated reason that the provisions "expose[d]" the Employers "to an additional, potential lawsuit or lawsuits on grounds that we have never previously heard of, discussed, or agreed to," but failed to disclose that Carnes had secretly transferred twenty-three (23) franchised stores to the Shaman Parties five (5) months earlier. Summary of Emails [Doc. 373-1]

Continuing to believe that Carnes was the owner of twenty-three (23) franchised stores that could be readily levied upon and sold, Mr. O'Neal agreed to settle his FLSA, breach of contract, private whistleblower, and unjust enrichment claims against the Employers for $50,000.00, and to execute a settlement agreement that included the following relevant provisions:

> 2.1 **Mutual Release**. Upon the Effective Date, the Parties, on
> behalf of themselves and each and all of their agents, employees,
> representatives, heirs, successors, licensees and assigns, hereby
> fully, forever and irrevocably release and discharge each other
> Party, and each of their affiliates, parents, subsidiaries,
> wholesalers, retailers, or dealers, and each and all of their

15

respective present or former directors, officers, consultants, affiliated entities or corporations, subsidiaries, divisions, franchisees, partners, joint venturers, agents, shareholders, investors, creditors, insurers, attorneys, employees, representatives, successors, licensees, customers, and assigns (hereinafter "Released Parties") from any and all "Claims" (as defined in Section 2.2), that the Parties and each and all of their agents, employees, representatives, successors, licensees and assigns have had, now have, or hereafter can or shall have against any of the other Released Parties.

2.2. Notwithstanding the foregoing mutual release, nothing herein shall release or provide any rights as a third-party beneficiary to the defendants in this Lawsuit that are not parties to this release: Brandon Carnes, Katelyn Sigman, and Florida Shaman Properties, LLC.

2.3. The term "Claims" shall mean any and all past, present or future claims, demands, obligations, actions, causes of action, property damage claims, harm to chattel claims, bailment claims, indemnification claims, subrogation claims, extra contractual damages claims (including bad faith), contribution claims, personal injury claims, wrongful death claims, conscious pain and suffering claims, punitive damages claims, spoliation of evidence claims, or any other disability claims, rights, damages, costs, losses of services, losses of use, expenses and compensation of any nature whatsoever, whether based on a tort, equity, contract or other theory of recovery, which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are in any way related to events, acts, conduct, or omissions occurring prior to O'Neal's execution of this Agreement including, but not limited to, any claims that relate in any way to O'Neal's alleged employment with Shaman or otherwise relate to O'Neal's relationship with Shaman.

2.3 (sic) O'Neal acknowledges and agrees that the release and discharge set forth above is a general release. O'Neal expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which the O'Neal does not know or suspect to exist, whether through ignorance, oversight, error,

16

negligence, or otherwise, and which, if known, would materially affect O'Neal's decision to enter into this settlement agreement. O'Neal further agrees that O'Neal has accepted payment of the sums specified herein as a complete settlement and compromise of matters involving disputed issues of law and fact. O'Neal assumes the risk that the facts or law may be other than O'Neal believes. It is understood and agreed to by the parties that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of Shaman, by whom liability is expressly denied.

\* \* \*

4.1 **Confidentiality**. As consideration and inducement for this settlement, all terms of the settlement and this document will be held in strict confidence by all parties to this action, including but not limited to O'Neal and O'Neal's attorneys, agents, representatives and relations. The parties and their attorneys agree to keep the terms of this settlement in confidence and not to publish, advertise, disclose, disseminate or reveal the settlement amount, terms and/or conditions to anyone including, but not limited to, any non-party attorneys, publishers, advertisers, websites, web publications, internet publications, media outlets, representatives of the media (which include but are not limited to printed media (such as newspapers), internet media and radio media), legal or other journals or periodicals, legal publications and ATLA publications\*\*\* in the absence of a court order compelling them to do so and not without prior written notice to the other parties' attorneys. All parties acknowledge that this requirement of confidentiality is a material term of the settlement of this litigation and that any failure to fully and completely comply with the confidentiality requirement may subject the offending party to legal damages, including sanctions. By way of clarification, however, all parties may be allowed to disclose the terms of this settlement to a court in order to obtain an order seeking enforcement of the settlement, only or as required by law and only to the minimal extent necessary to state and federal tax authorities, officers of the court, lienholders, related caregivers, and bill collectors. Out of the settlement payments being made herein, One Hundred Dollars ($100.00) is being paid to the O'Neal as consideration for entering into this confidentiality agreement and Shaman agrees that these

payments are adequate consideration for entering into the confidentiality agreement.

&ast; &ast; &ast;

5. **Governing Law**. The Parties agree that the laws of the State of Florida shall govern the interpretation and enforcement of this Agreement, without giving effect to that state's choice of law rules.

&ast; &ast; &ast;

6.1. **Mutual Non Disparagement**.  All parties hereto agree that they shall not, in any communications whatsoever, no matter the medium, whether verbally, in writing, or online, with the press or other media or any customer, client or supplier, criticize, ridicule or make any statement which disparages or degrades the other party.

&ast; &ast; &ast;

7.1. **Severability**. In the event that any provision or portion of this Agreement shall be determined by a Court to be invalid, illegal, or unenforceable, the remaining provisions or portions of this Agreement shall continue in full force and effect, unless such severability would frustrate the purpose of this Agreement.

&ast; &ast; &ast;

7.9.  **Notices**. Any notice in connection with this Agreement will be in writing and will be delivered by hand or by a recognized overnight carrier to the Party due to receive the notice through such Party's counsel at their respective addresses as follows or to any such other address as shall be advised by any Party to any other Party in writing. Notices shall be effective as of the date of receipt. To O'Neal: Scott Terry, Esq. 16524 Pointe Village Drive Suite 100 Lutz, Florida 33558 To Shaman: Nicholas Porto, Esq. The Porto Law Firm 1600 Baltimore, Suite 200A Kansas City, Missouri 64108.

&ast; &ast; &ast; &ast;

Joint Statement of Undisputed Facts [Doc. 388] at Par. 1.

The terms of the Settlement Agreement [Doc. 188-1] were finalized on May 14, 2021, and a Stipulation of Dismissal [Doc. 72] was filed in the district court the same day.  As anticipated, a default judgment [Doc. 77] was entered

on August 18, 2021, against Carnes and Shaman Florida, jointly and severally, in the amount of $608,400.00 and Mr. O'Neal commenced post-judgment discovery in the W.D. Mo. by serving, *inter alia*, subpoenas upon the Shaman Parties to obtain documents regarding Carnes' twenty-three (23) franchised stores in preparation for initiating attachment proceedings.

The Shaman Parties objected to the subpoenas and Mr. O'Neal moved to compel. The Shaman Parties filed Suggestions in Opposition disclosing the terms of the parties' settlement and attaching a partially redacted copy of the Settlement Agreement [Doc. 188-1] in the court's publicly accessible records on November 30, 2021—three (3) weeks <u>before</u> Mr. O'Neal filed his initial Supplemental Complaint [Doc. 135] in the district court and in doing so, materially breached the release included in the Settlement Agreement [Doc. 188-1]—without providing Mr. O'Neal's "attorney" "prior written notice" so that he could take action to prevent or limit the disclosure of confidential information before the "bell had been rung." Joint Statement of Undisputed Facts [Doc. 388] at Pars. 2 through 5.

### III.   ORDERS PRESENTED AND STANDARD OF REVIEW
#### A.  Judgment on the Pleadings [Doc. 230]

The district court ruled that Section 2.1 ("Mutual Release") of the Settlement Agreement [Doc. 188-1] is enforceable as a matter of law and barred

19

each of Mr. O'Neal's causes of actions against the Shaman Parties.  The district court entered judgment on the pleadings [Doc. 230] on Mr. O'Neal's First Amended Complaint [Doc. 161] notwithstanding the fact that the release was not "scrutinize(ed) for fairness" and judicially approved as mandated by *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982), and its progeny.  *Id.* at p. 6; and 8.

The district court explicitly rejected this Court's *Lynn's Food* directive that it must "review an entire settlement agreement]—including the resolution of non-FLSA claims—to ensure that the compromise of the FLSA claims is fair," stating that Mr. O'Neal:

> (a)rgues that the FLSA's extraordinary protections should be extended to non-FLSA claims if the dismissed action also included FLSA claims.  O'Neal's arguments in support of expansion are unavailing.  Most troubling, there is no statutory basis for expansion. The FLSA creates wages and overtime claims and—according to *Lynn's Food*—protects those claims from unsupervised compromise. But the FLSA does not protect every claim an employee brings against an employer. And there is no statutory reason to think the FLSA protects non-FLSA claims simply because they are included in a joint settlement.
>
> O'Neal identifies no caselaw extending the *Lynn's Food* judicial-approval requirement to non-FLSA claims. Instead, he points to language suggesting that a court may need to review an entire settlement agreement—including the resolution of non-FLSA claims—to ensure that the compromise of the FLSA claims is fair. Perhaps so. Judges in this District certainly follow that practice. But the point is irrelevant.

***

> There is little, 'if any, statutory basis for a requirement that the district court approve a settlement.' *Casso-Lopez v. Beach Time Rental Suncoast, LLC*, 335 F.R.D. 458, 460 (M.D. Fla. 2020). Relying on the purposes of the FLSA, the Supreme Court has held that a private agreement cannot alter or avoid the requirements of the FLSA. See *Dees v. Hydradry6, Inc.*, 706 F.Supp.2d 1227, 1232-35 (M.D. Fla. 2010) (Merryday, J.)(explaining these decisions at length). Even apart from the merits of those decisions, 'propriety of extending their reasoning to deprive an employee [of] the right to settle, in good faith, a bona [fide] controversy with his employer'—as *Lynn's Food* does—is a matter worth reconsidering. *Atlantic Co. v. Broughton*, 146 F.2d 480, 483 (5th Cir. 1944) (Waller, J., dissenting).

Judgment on the Pleadings [Doc. 230] at p 6; and fn. 2 (first two paragraphs joined; brackets in original).

This Court "reviews *de novo* an order granting judgment on the pleadings." *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) (internal citation omitted). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id*. The Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

In addition, this circuit has "adopted 'the absolute rule that a prior decision of the circuit (panel or *en banc*) [can]not be overruled by a panel but only by the court sitting *en banc*.'") *Sabal Trail Transm., LLC v. 18.27 Acres of Land in Levy County*, 59 F.4th 1158, 1164 (11th Cir. 2023) (quoting *Bonner v. City of*

*Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (parenthesis and brackets in original).

### B. Summary Judgment [Doc. 415]

The parties filed cross-motions [Doc. 385 and 390] for summary judgment directed at the correct construction to be given the confidentiality clause included in Section 4.1 of the Settlement Agreement [Doc. 188-1]. Applying Florida's "specific vs. general" rule of contract interpretation, the district court determined [Doc. 415] that the phrase "(b)y way of clarification" in the confidentiality section is "specific language" and "establish[es] an exception to the "general language" found in a prior sentence that requires written notice be given to the non-disclosing party before disclosure of confidential information is made "to anyone." *Id*. at p. 15-16.

The district court decided in favor of Mr. O'Neal as to the Shaman Parties' claim for attorney fees relating to their requests for declaratory relief in Count One of the Counterclaim [Doc. 188], but granted the Shaman Parties' cross-motion for summary judgment as to Count Two for breach of contract. The district court awarded the Shaman Parties nominal damages for breach of the non-disparagement provision and awarded attorney fees for breach of the release. *Id*. at p. 2

22

A district court's grant of summary judgment is reviewed *de novo*. *Boigris v. EWC P&T, LLC*, 7 F.4th 1079, 1084 (11th Cir. 2021); and *Arrfaga v. Fla. Pacific Farms, L.L.C.*, 305 F.3d 1228, 1234-35 (11th Cir. 2002). A summary judgment in favor of a defendant is required when the plaintiff fails to establish the existence of an element essential to the counterclaim plaintiff's case, and on which the counterclaim plaintiff will bear the burden of proof at trial. *Caracol Television S.A. v. Telemundo Television Studios, LLC*, 2022 WL 202546, *2 (11th Cir. 2022), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

The interpretation of a contract, including whether an ambiguity exists, is a question of law that is reviewed *de novo* by this Court. *Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd.*, 882 F.3d 1033, 1039 (11th Cir. 2018); and *F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010).

## C. Amendment Order [Doc. 273]

The magistrate judge stated that Mr. O'Neal's "new causes of action" in his Proposed Supplemental Complaint [Doc. 272-2] for recission of the Settlement Agreement [Doc. 188-1] and to amend his answer and affirmative defenses [Doc. 272-1] to the Shaman Parties' counterclaim [Doc. 188] "appear to be an attempt at maneuvering around the court's order granting the Shaman

Defendants' motion for judgment on the pleadings" and that Mr. O'Neal's "unexplained delay in waiting to raise the new causes of action and affirmative defenses only after the dismissal of his supplemental complaint at least raises the specter of undue delay, bad faith, and dilatory motive." Amendment Order [Doc. 273] at p. 12.

The magistrate judge ruled that Mr. O'Neal's claim for rescission of the Settlement Agreement [Doc. 188-1] and his proposed affirmative defense of fraudulent inducement to contract are facially implausible and futile because they are "rooted in the claim that Shaman Franchise" "misrepresented information" about Carnes' ownership of franchised stores in Shaman Franchise's "disclosure documents issued on April 30, 2021," but "the parties noticed the prior settlement agreement with the court on April 21, 2021 (Doc. 65), nine days before the issuance of the financial disclosure documents Mr. O'Neal claims he relied upon in entering into the prior settlement agreement." *Id.* at p. 8.

The magistrate judge also determined that Mr. O'Neal's Proposed Amended Complaint [Doc. 272-2] was defective because neither his "motion or attached proposed amended supplemental complaint indicated Mr. O'Neal actually returned or made a legible offer to return the $50,000 he received as part

24

of the prior settlement agreement. Mr. O'Neal thus did not adequately plead his claim of rescission." *Id.*

A denial of a motion to amend is reviewed for an abuse of discretion, "but whether the motion is futile is a question of law that [that the Court reviews] *de novo.*" *Foley v. Orange County*, 2024 WL 49134, *2 (11th Cir. 2024) (quoting *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015); brackets added). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001).

## SUMMARY OF ARGUMENT

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350 (11th Cir. 1982), this Court held that a settlement of a FLSA claim must be "scrutinized" by the district court for "fairness" in order to be enforceable. *Id.* at 53. In this case, no motion to approve the Settlement Agreement [Doc. 188-1] was filed and no judicial determination was made as to whether its terms were tainted by "the often great inequalities in bargaining power between employers and employees." In *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013).

The district court is "bound by Eleventh Circuit precedent and is not empowered to simply ignore that precedent to make new law." *In re Hubbard*,

803 F.3d 1298, 1309 (11th Cir. 2015). *Lynn's Food* is clearly applicable to Mr. O'Neal's compromised FLSA claims and the district court clearly erred as a matter of law in its effort "to make new law" and the Judgment on Pleadings [Doc. 230] is due to be reversed. *Id*.

The judgement on pleadings [Doc. 230] must also be reversed for the independent reason that the Shaman Parties cannot enforce its pervasive release, waiver, and assumption of the risk provisions because of their prior material breach. Under Florida law, "to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." *Rollins v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). It is undisputed that the Employers failed to provide the required prior written notice before disclosing the terms of the Settlement Agreement [Doc. 188-1] in publicly accessible court records of the W.D. Mo. three (3) weeks prior to the employee's filing of his supplemental proceedings against the employers.

Instead of interpreting the word "clarification" and the following language in accordance with its plain and ordinary meaning, however, the district court applied a "general vs. specific" rule of contract construction and wrongly determined that the "clarification" sentence is "specific" language and is an "exception" or "carveout" to the "general" sentence prohibiting disclosure of

26

the confidential information to "anyone" without "prior written notice." Summary Judgement [Doc. 415] at p. 18. The district court's construction is incorrect.

The more reasonable interpretation is that the prior written notice requirement must be satisfied to allow the other party an opportunity to take steps to prevent or minimize the disclosure before the "bell has been rung." Otherwise, the "prior written notice' requirement has no practical meaning and is mere surplusage. The district court's construction contorts the plain language and is not consistent with the parties' intentions. The summary judgment [Doc. 415] against Mr. O'Neal was wrongly decided and is due to be reversed and his cross-motion [Doc. 385] for summary judgment is due to be granted.

The magistrate judge's denial [Doc. 273] of Mr. O'Neal motion [Doc. 272] to amend his pleadings is an abuse of discretion and erroneous as a matter of law. There is no evidence of "undue delay, bad faith, or dilatory motive" by Mr. O'Neal's in the filing of his motions to amend his pleadings. *Environmental Protection Commission of Hillsborough County, Florida v. Mercedes Benz USA, LLC*, 2023 WL 4678978, *3 (11th Cir. 2023). Mr. O'Neal's initial motion [Doc. 241] to amend was filed thirty (30) days after the Judgment on Pleadings [Doc. 230] was entered.

There is also no "repeated failure to fix deficiencies" in prior pleadings for the obvious reason that Mr. O'Neal had not been previously granted permission to amend. Nor would permitting the amendments have caused the Shaman Parties "undue prejudice." *Id.* The magistrate judge also misread the parties' Joint Notice [Doc. 65] and Mr. O'Neal's Proposed Amended Complaint [Doc. 272-2]. The magistrate judge mistakenly concluded that Mr. O'Neal's proposed cause of action for recission of the Settlement Agreement [Doc. 188-1] (and proposed affirmative defenses of fraudulent inducement to contract) are facially implausible and futile based on a mistaken reading of the parties' Joint Notice [Doc. 65] of settlement filed n the district court. The Joint Notice [Doc. 65] plainly states that the parties "have resolved Plaintiff's claims against the Shaman entities" and "are in the process of drafting a confidential agreement to memorialize the resolution...." *Id.* at p. 1 (emphasis added).

The magistrate judge also overlooked allegations in Mr. O'Neal's Proposed Amended Complaint [Doc. 272-2] and wrongly concluded that his proposed pleading was defective because neither Mr. O'Neal's "motion or attached proposed amended supplemental complaint indicated Mr. O'Neal actually returned or made a legible offer to return the $50,000 he received as part of the prior settlement agreement. Mr. O'Neal thus did not adequately plead his claim of rescission." *Id.* The Proposed Amended

Complaint [Doc. 272-2] in fact, specifically alleges that Mr. O'Neal informed the Shaman Parties "that he had rescinded the settlement Agreement" and "offer[ed] to restore the benefits received" pursuant to the Settlement Agreement [Doc. 188-1]" so that "the conditions of the parties may be restored as the same existed prior to the execution of the [settlement agreement]." *Id.* Paragraphs 151 and 152 (brackets added).

The magistrate judge's refusal to allow Mr. O'Neal a single opportunity to amend his pleadings is an abuse of discretion and plainly erroneous as a matter of law.

## ARGUMENT

**A.** **The District Court Erred As a Matter of Law By Holding That the Release In the Settlement Agreement [Doc. 188-1] Settling Mr. O'Neal FLSA Claim Is Enforceable Without the Release Being Scrutinized For Fairness and Judicially Approved As Mandated By *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982)**

This Court held in *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350 (11th Cir. 1982), that the compromise of a FLSA claim must be "scrutinized" by the district court for "fairness" to be enforceable, stating:

> (t)here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise

payment to employees of unpaid wages owed to them .... The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Lynn's Food,* at 1352-53.  And when examining a proposed settlement, this Court

instructs that district courts must determine whether the compromise represents

"a fair and reasonable resolution of a bona fide dispute over FLSA provisions."

*Id*. at 1355.

In *Wolff v. Royal Am. Mgt., Inc.*, 545 Fed.Appx. 791 (11th Cir. 2013), the

Court stated:

(w)e have said that because the FLSA seeks to protect employees from inequalities in bargaining power between employers and employees, Congress had made its provisions mandatory.  Thus, FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.

*Wolff*, at 793 (internal citations and quotation marks omitted).  And as the Court

stated in *Rakip v. Paradise Awnings Corp.*, 514 Fed.Appx. 917, 919 (11th Cir. 2013):

*Lynn's Food* does not stand for the proposition that any valid settlement of a FLSA claim must take a particular form. It only means that the district court must take an active role in approving the settlement agreement to ensure that it is not the result of the employer using its superior bargaining position to take advantage of the employee.

*Rakip*, at 919–20 (emphasis added).

Moreover, this Court has also had occasion to specifically address why releases extracted by employers from workers to settle FLSA cases must be examined. In *Nall, v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013), the Court found a release unenforceable because the settlement was not approved and stated:

> permitting an employer to secure a release from the worker who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that [the FLSA] should have. Given the often great inequalities in bargaining power between employers and employees, mandatory protections not subject to negotiation or bargaining between employers and employees are needed to ensure that an employer—who has a strong bargaining position—does not take advantage of an employee.
>
> * * *
>
> Having decided that the *Lynn's Food* requirements apply here, the next question is whether the settlement in question met them. It is not a difficult question. The agreement between Nall and Malik was not made under the supervision of the Secretary of Labor, so it is valid only if the district court entered a stipulated judgment approving it.

*Nall*, at 1307; 1308  (internal quotation marks and citations omitted).

Lastly, in *Silva v. Miller*, 307 Fed.Appx. 349, 351 (11th Cir. 2009), this Court disparaged the argument that "no judicial review is applicable when the employee is represented by counsel and the parties stipulate that the employee is receiving full recovery under the facts of the case." *Id.* at 351.  While the *Silva*

court did not articulate "what, if any, judicial oversight applies under *Lynn's Food* when full satisfaction of the FLSA claim is made," it stated that "(o)n its face, *Lynn's Food* suggest no exception to judicial oversight of settlements when the employee receives all wages due." *Id*. Having determined that the settlement agreement included the unsupervised settlement of the worker's right to the full payment of his attorney fees under the FLSA and constituted a compromise, the *Silva* court held that the "district court had a duty to review the compromise of Silva's FLSA claim...." *Id*. at 352.

A release of FLSA claims cannot be judicially approved if it is "pervasive and unbounded [in] scope," "unfair," or "precludes a valid evaluation of the compromise." *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1353 (M.D. Fla. 2010) (brackets added). As explained in *Moreno*:

> a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer. In the typical case, no unknown claim accrues to the employee and the pervasive release effects no change to the legal relationship of the parties. In other words, in the typical case, the pervasive release is superfluous and can be stricken without objection from either the employee or the employer. In the occasional case, an unknown claim accrues to the employee and the employer receives a release from a contingent liability in exchange for a modest payment of wages unconditionally owed to the employee. The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee. In either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the

circumstance. The employer's attempt to "play with house money" fails judicial scrutiny.

*Moreno*, at 1352.

In *Stephenson v. SunTrust Bank*, 2013 WL 12392462, *4, *report and recommendation adopted*, 2013 WL 12388665 (M.D. Fla. 2013), the district court stated the following about releases included in FLSA settlement agreements:

> (t)he FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time. Further, in the typical FLSA case, the indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible.

*Stephenson*, at *4. See also, *Baugh v. RNMG, Inc.*, 2021 WL 4155403, *3, *report and recommendation adopted,* 2021 WL 4148258 (M.D. Fla. 2021)  (explaining that "an employer cannot use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA" (internal quotation marks, brackets, and citations omitted)"); and *Dumas v. 1 Able Realty, LLC*, 2018 WL 1791534, *report and recommendation adopted*, 2018 WL 1791535 (M.D. Fla. 2018) (approving FLSA release that did not require plaintiff to release all claims, but only those related

to plaintiff's employment with defendant that were averred in the complaint), *report and recommendation adopted*, 2018 WL 1791535 (M.D. Fla. 2018).

The district court's ruling that the release, waiver, and assumption of the risk sections can be "severed" [4] from the Settlement Agreement [Doc. 188-1] as they apply to FLSA claims, but can be judicially rewritten to bar Mr. O'Neal's non-FLSA causes of action against the Employers, is clearly erroneous. Judgement on Pleadings [Doc. 230] at p. 7. "While in some cases offending sentences can be severed from a provision, these are instances in which there is no "interdependence between the [severed] clause and the remaining clauses of the agreement which would [require] the trial court to rewrite or 'blue pencil' the agreement." *Healthcomp Evaluation Serv. Corp. v. O'Donnell,* 817 So.2d 1095, 1097 (Fla. 2d DCA 2002) (internal citation omitted]. In this case, the mutual release is the essence of the Settlement Agreement [Doc. 188-1] and cannot be severed without undermining the parties' intentions.

In addition to prohibiting releases, waivers, and assumption of the risk covenants of the type included in the Settlement Agreement [Doc. 188-1], district courts in this circuit have also consistently held that the "inclusion of a

---

[4] The dictionary defines "sever" as meaning "to break or separate, especially by cutting"; "Her foot was severed from her leg in a car accident." *dictionary.cambridge.org/dictionary/sever*.

confidentiality clause" in a FLSA settlement agreement "must be rejected as unreasonable" under *Lynn's Food* because it "both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights." *Exantus v. Fiesta Restaurant Group, Inc.*, 2023 WL 8720292, *1 (S.D. Fla. 2023) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242–43. See also, e.g., *Baker v. G&S Electrical of Northwest Florida, LLC*, 2023 WL 10554725, *1 (N.D. Fla. 2023) (A "confidentiality provision [in a settlement agreement] contravenes FLSA policy."); and *Henkle v. Monkey in Paradise, LLC*, 2023 WL 5961532, *1 (S.D. Fla. 2023) ("A confidentiality provision in a settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.").

Finally, by failing to review the terms of the settlement the district court also did not examine the amount of attorney fees paid to Mr. O'Neal's attorney for prosecuting his FLSA claims for "fairness." As this court instructed in *Silva v. Miller,* 307 Fed.Appx. 349, 351 (11th Cir.2009), "(t)he district court must review ... the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."

35

To be clear, district courts have broad discretion in reviewing and approving FLSA settlement agreements. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F.App'x 628, 629 (11th Cir. 2013) (declining to hear an interlocutory appeal seeking clarification of the legal standard to be applied when reviewing FLSA settlement agreements, specifically with respect to non-monetary provisions, deferring to the discretion of the district court). The district court could have at least theoretically have determined, in the exercise of its discretion, that the release, waiver, assumption of the risk, confidentiality provisions, together with the amount of attorney fees paid by Mr. O'Neal, are "fair" under the *Lynn's Food* standards had the provisions been presented for its review.

But those are not the facts of this case. No motion to approve the Settlement Agreement [Doc. 188-1] was filed. No judicial review of the document occurred. And no judicial determination was made as to whether the terms of the settlement are tainted by "the often great inequalities in bargaining power between employers and employees." *Nall*, at 1308. The district court is "bound by Eleventh Circuit precedent and is not empowered to simply ignore that precedent to make new law." *In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) (finding error where "district court inadvertently transgressed the fundamental rule that courts of this circuit are bound by the precedent of this

circuit."). The district court erred as a matter of law and the judgement on the pleadings [Doc. 230] is due to be reversed.

### B. The District Court Erred By Denying Mr. O'Neal's Motion For Summary Judgment

The Settlement Agreement [Doc. 188-1] states that it must be interpreted in accordance with Florida law. *Id*. at Section 5. In applying Florida's rules of contract interpretation:

> (c)ourts are required to interpret a contract 'as a whole and give meaning and effect to each part.' *Tita v. Tita*, 334 So. 3d 646, 650 (Fla. 4th DCA 2022). '[An] interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.' *PNC Bank, N.A. v. Progressive Emp. Servs. II*, 55 So. 3d 655, 658 (Fla. 4th DCA 2011) (quoting *Premier Ins. Co. v. Adams,* 632 So. 2d 1054, 1057 (Fla. 5th DCA 1994)). 'The inconvenience, hardship, or absurdity of one interpretation of a contract or its contradiction of the general purpose of the contract is weighty evidence that such meaning was not intended when the language is open to an interpretation which is neither absurd nor frivolous and is in agreement with the general purpose of the parties.' *James v. Gulf Life Ins. Co.*, 66 So. 2d 62, 63–64 (Fla. 1953).

*All Year Cooling & Heating, Inc. v. Burkett Properties, Inc.*, 357 So.3d 131, 132–33 Fla. 4th DCA 2023). "Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions."). *Ta Chen International., Inc v. Benada Aluminum Products, LLC*, 2021

WL 7541515, *6–7 (M.D. Fla. 2021) (quoting *Kipp v. Kipp*, 844 So. 2d 691, 693

n.2 (Fla. 4th DCA 2003)

Section 4.1 ("Confidentiality") of the Settlement Agreement [Doc. 188-1]

consist of five (5) sentences:

**#1.** "As consideration and inducement for this settlement, all terms of the settlement and this document will be held in strict confidence by all parties to this action, including but not limited to the O'Neal and O'Neal's attorneys, agents, representatives and relations."

**#2.** "**The parties and their attorneys agree to keep the terms of this settlement in confidence and not to publish, advertise, disclose, disseminate or reveal the settlement amount, terms and/or conditions to anyone** including, but not limited to, any non-party attorneys, publishers, advertisers, websites, web publications, internet publications, media outlets, representatives of the media (which include but are not limited to printed media (such as newspapers), internet media and radio media), legal or other journals or periodicals, legal publications and ATLA publications, **in the absence of a court order compelling them to do so and not without prior written notice to the other parties' attorneys**."

**#3** "All parties acknowledge that this requirement of confidentiality is a material term of the settlement of this litigation and that any failure to fully and completely comply with the confidentiality requirement may subject the offending party to legal damages, including sanctions."

**#4.** "**By way of clarification**, however, all parties may be allowed to disclose the terms of this settlement to a court in order to obtain an order seeking enforcement of the settlement, only or as required by law and only to the minimal extent necessary to state and federal tax authorities, officers of the court, lienholders, related caregivers, and bill collectors."

> **#5.** "Out of the settlement payments being made herein, One Hundred Dollars ($100.00) is being paid to the O'Neal as consideration for entering into this confidentiality agreement and Shaman agrees that these payments are adequate consideration for entering into the confidentiality agreement."

Settlement Agreement [Doc. 188-1] at Section 4.1 (emphasis added). The relevant language is clear.

The first sentence sets forth the scope of the parties' non-disclosure obligation as being "all terms of the settlement," including the "document" memorializing the settlement. *Id*. Sentence #2 prohibits the parties from disclosing the terms of the settlement or the contents of the Settlement Agreement [Doc. 188-1] to:

> **anyone**, including, but not limited to, any non-party attorneys, publishers, advertisers, websites, web publications, internet publications, media outlets, representatives of the media (which include but are not limited to printed media (such as newspapers), internet media and radio media), legal or other journals or periodicals, legal publications and ATLA publications, **without a court order compelling them to do so and not without providing prior written notice to the other parties' attorney**.

See sentence 2 (emphasis added). As this Court has instructed: "'And' means 'along with or together with.' 'And*,' Webster's Third New Int'l Dictionary*. So when 'and' is used to connect a list of requirements, the word ordinarily has a 'conjunctive' sense, meaning that all the requirements must be met." *United States v. Garcon*, 54 F.4th 1274, 1278 (11th Cir. 2022), *cert. dismissed*, 144 S.Ct. 339

(dictionary definition in original; citing *United States v. Palomar-Santiago*, 593 U.S. 321, 141 S. Ct. 1615, 1620–21, 209 L.Ed.2d 703 (2021).

The clear purpose of the "prior written notice" requirement in sentence #2 is to ensure that the other party is aware of the disclosing party's intention to reveal confidential information and allow the non-disclosing party an opportunity to consult with the disclosing party and if necessary, seek a protective order or other appropriate remedy before the disclosure occurs. As this Court recently stated in *Prestige Ins. Group, LLC v. Allstate Ins. Co.*, 2024 WL 621433, *2 (11ᵗʰ Cir. 2024), "(i) is well settled that a court cannot rewrite the terms of a contract in an attempt to make otherwise valid contractual terms more reasonable for a party or to fix an apparent improvident bargain. [U]nder Florida law, unless there is a genuine ambiguity, the rules of contract construction do not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties". *Prestige Ins. Group, LLC v. Allstate Ins. Co.*, 2024 WL 621433, *2 (11ᵗʰ Cir. 2024) (quoting *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527 (11th Cir.1994) and *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979); internal quotation marks omitted).

The district court interpreted sentence #2 and sentence #4 as:

(c)ontain[ing] two conflicting clauses regarding the Parties' confidentiality obligations, one general and the other specific. The general clause imposes a broad obligation that applies to all potential recipients 'in the absence of a court order compelling [disclosure] and not without prior written notice to the other parties' attorneys.' Shaman Statement of Facts ¶ 24. But that obligation is qualified by the more specific carveout clause, expressly offset with the phrase "[b]y way of clarification, however," to highlight the contradiction. *Id.*

...And the carveout clause, within its scope, is permissive—it provides that 'all parties may be allowed to disclose the terms of this settlement to a court in order to obtain an order seeking enforcement of the settlement.' *Id.* (emphases added). The ordinary meaning of this language, taken in context, is a limited exception for certain disclosures to the general clause's more rigorous procedural requirements. Indeed, it could not be anything else without being superfluous, as courts are already within the unlimited universe of potential disclosures covered by the general clause's "including, but not limited to" language.

\* \* \*

**The Shaman Defendants and the Magistrate Judge both read this more specific language to establish an exception to the general clause's prior written notice requirement. I agree with both.**

\* \* \*

In sum, the general clause of the confidentiality provision requires a court order and prior written notice. But the carveout clause allows parties to disclose to a court to obtain an order seeking enforcement without satisfying the general clause's procedural requirements. The Missouri disclosure, made seeking an order quashing O'Neal's subpoena based on the settlement agreement, fell squarely within the carveout clause's exception. Thus, the Magistrate Judge correctly concluded that the Shaman Defendants did not materially breach. O'Neal's objection to the Report and Recommendation is overruled.

Order  [Doc. 415] at pp. 15-16; and 18 (citation to R&R [Doc. 413] omitted;

emphasis added).

The district court's conclusion that that the "carveout" in sentence #4 is an "exception" to the "procedural requirements" in sentence #2, and that the phrase "[b]y way of clarification" in sentence #4 must be construed as providing an "exception" to the notice requirement in sentence #2 contradicts the plain language and makes no practical sense. *Id.* at p. 18 (brackets added). The definition of "exception" is "something that is not included in a rule" or "not treat[ed] ... according to the usual rules." *dictionary.cambridge.org/ dictionary/english/exception*. "Clarification" means "an explanation or more details that makes something clear or easier to understand." *dictionary.cambridge.org/dictionary/english/clarification*. If the Parties wanted sentence #4 to provide an "exception" to the rule stated in sentence #2, they would have used "by way of exception," "notwithstanding," or similar language, but obviously did not do so.

When read in context, sentence #4 does not state an "exception" to the rule set forth in sentence #2 requiring notice before disclosure; nor are the two (2) sentences in conflict. The "prior written notice" proviso in sentence #2 is unambiguous and requires no additional explanation. Instead, sentence #4 "clarifies" the first proviso of sentence #2 and states what happens in the absence of a "court order" "compelling disclosure" and a party wants to "disclose" the confidential information to "a court in order to obtain an order seeking

42

enforcement of the settlement," or "only to the minimal extent necessary" to "state and federal tax authorities," "lienholders," "related caregivers," and "bill collectors."

The "clarification" does not, however, negate the "prior written notice" requirement in sentence #2 that allows the opposing party in a lawsuit an opportunity to seek a protective order or other remedy (or waive the confidentiality requirement) before the disclosure occurs. Sentence #4 not only applies to disclosures made to courts, but applies to the other identified groups of third parties as well. Applying the district court's analysis, the disclosing party would have no contractual obligation to notify the non-disclosing party before revealing confidential information to "state and federal tax authorities," "lienholders," "related caregivers," and "bill collectors." The district court's interpretation effectively eliminates the "prior written notice" proviso in sentence #2 and makes no practical sense.

The district court's construction also conflicts with the cardinal rule that "an interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *Premier*, 632 So. 2d at 1057. The more reasonable interpretation of sentence #4 is that the notice requirement in sentence #2 must be satisfied to allow the other party an opportunity to take steps to prevent or minimize the disclosure before the

"bell has been rung," and it does not matter if the disclosure is going to be made to a "court" to enforce the terms of the settlement, or to "state and federal tax authorities," "lienholders," "related caregivers," and/or "bill collectors."

To conclude otherwise completely vitiates the "prior written notice' requirement and leaves the non-disclosing party with no way to enforce his contractual right of confidentiality before the disclosure is made and the damage is done. Furthermore, it is "not the function of the courts to 'rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.'" *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1297 (11th Cir. 2019) (citing *Marriott Corp. v. Dasta Const. Co.*, 26 F.3d 1057, 1068 (11th Cir. 1994) (quoting *Steiner v. Physicians Protective Tr. Fund*, 388 So.2d 1064, 1066 (Fla. 3d Dist. Ct. App. 1980)).

The parties agreed in sentence #1 that "all terms of the settlement and this document will be held in strict confidence by all parties to this action." The Shaman Parties willfully breached the confidentiality covenant in the Settlement Agreement [Doc. 188-1] three (3) weeks before Mr. O'Neal filed his supplemental proceedings [Doc. 135]. It is not the district court's "function" to relieve the Shaman Parties from the "hardship" of their material breach, including the resulting discharge of the release, waiver, assumption of the risk

44

clauses, and any duties Mr. O'Neal had under the non-disparagement section of the Settlement Agreement [Doc. 188-1]. *Dear*, 933 F.3d at 1297.

"(T)o maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." *Rollins v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Caracol Television S.A.*, at *2. An essential element of the Shaman Parties' breach of contract counterclaim [Doc. 188] is proving performance their obligations under the confidentiality covenant. The undisputed evidence in this case is that Mr. O'Neal's attorney was not provided "prior written notice" before the disclosure of confidential information occurred in the W.D. Mo.

As a consequence of their prior breach, the Shaman Parties cannot prove the performance of their contractual duties under the Settlement Agreement [Doc. 188-1], or a legal excuse for their nonperformance, which is "essential" to their breach of contract counterclaim. *Caracol Television S.A.*, at *2. This is a proper case for the Court to reverse the district court's grant of Summary Judgment [Doc. 415] in favor of the Shaman Parties and grant Mr. O'Neal's cross-motion for summary judgment on the counterclaim [Doc. 188].

45

### C. The Magistrate Judge Abused Her Discretion By Denying Mr. O'Neal's Motion To Amend Pleadings [Doc. 272]

This court has summarized the legal standard applicable to motions to amend pleadings as follows:

> (f)irst, we have noted that a district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)"), which mandates that leave to amend, when requested by the plaintiff, "be freely given when justice so requires." *See Bryant [v. Dupree]*, 252 F.3d at 1163 (applying the standard for Rule 15(a)(2) amendment to the decision whether to dismiss with or without prejudice under Rule 12(b)(6)). In cases where the plaintiff has acted in good faith and has not been given a first chance to amend its initial complaint, we have treated dismissal with prejudice as a remedy of last resort. *See, e.g., Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993) (noting that dismissal with prejudice is appropriate "only in those situations where a lesser sanction would not better serve the interests of justice") (internal quotation marks omitted). And we have previously espoused the view that, "where a more carefully drafted complaint might state a claim," the district court should grant a plaintiff at least one chance to amend its complaint before dismissing the action with prejudice. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (requiring district courts to grant sua sponte all plaintiffs at least one opportunity to amend), overruled by *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

*Eiber Radiology, Inc. v. Toshiba America Med. Systems, Inc.*, 673 Fed.Appx. 925, 929 (11th Cir. 2016) (brackets added).

The magistrate judge's denial of Mr. O'Neal's motion [Doc. 272] to amend his pleadings is tantamount to a dismissal with prejudice, and as stated in *Michelson v. Secy., Dept. of Army Agency*, 860 Fed.Appx. 677 (11th Cir. 2021):

> (d)ismissal with prejudice is a drastic remedy to be used only in those situations where a lesser sanction would not better serve the interests of justice. Thus, a district court abuses its discretion by sua sponte dismissing a civil action with prejudice if (1) it fails to make a finding that the plaintiff acted willfully or that a lesser sanction would not have sufficed, and (2) nothing in the record supports a finding that the plaintiff acted willfully or that a lesser sanction would not have sufficed.

*Michelson,* at 678 (internal quotation marks, brackets, and citations omitted). The magistrate judge did not "make a finding" that Mr. O'Neal "acted willfully or that a lesser sanction would have sufficed" in the Amendment Order [Doc. 273]. And there is "nothing in the record" that "supports [such] a finding." *Id.* (brackets added).

The magistrate judge's statement that Mr. O'Neal's "waiting to raise the new causes of action and affirmative defenses only after the dismissal of his supplemental complaint" "raises the specter"[5] of "undue delay, bad faith, and dilatory motive" is not a "finding.[6] Nor does the intimation that Mr. O'Neal has engaged in such egregious conduct as to warrant the ultimate sanction of dismissal of his supplemental proceedings with prejudice have any basis in fact. *Id.* at p. 12. Moreover, a district court must:

---

[5] "Specter" is defined as "something that causes fear or worry." *dictionary.cambridge.org/ dictionary/english/specter.*

[6] The phrase "finding of fact" means ("a) determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usually presented at the trial or hearing." *Black's Law Dictionary* (11th ed. 2019).

permit a plaintiff at least one opportunity to amend before dismissing with prejudice if a more carefully drafted complaint might state a claim. *Id.* However, a district court need not grant leave to amend where: (1) there is undue delay, bad faith, dilatory motive, or repeated failure to fix deficiencies; (2) permitting amendment would cause the opposing party undue prejudice; or (3) amendment would be futile.

*Environmental Protection Commission of Hillsborough County, Florida v. Mercedes Benz USA, LLC,* 2023 WL 4678978, *3 (11th Cir. 2023).

There is no evidence of "undue delay, bad faith, or dilatory motive" by Mr. O'Neal's in the filing of his motions to amend his pleadings. *Environmental Protection*, at *3. The Judgement on Pleadings [Doc. 230] was entered on July 11, 2022. Mr. O'Neal's initial motion [Doc. 241] to amend Mr. O'Neal's Amended Supplemental Complaint [Doc. 161] was filed on August 11, 2022—thirty (30) days after the Judgement of Pleadings Order [Doc. 230] was entered and his motion [Doc. 243] to amend his affirmative defenses was filed on August 12, 2022.[7] After waiting over five months for a decision on his initial motions [Doc. 241 and 242], Mr. O'Neal filed his Substituted Motion [Doc. 273] to amend his pleadings on January 30, 2023.

There is also no "repeated failure to fix deficiencies" in prior pleadings for the obvious reason that Mr. O'Neal had not been previously granted permission

---

[7] In fact, Mr. O'Neal's initial Motion [Doc. 241] to amend was filed the day after the district court denied [Doc. 240] Mr. O'Neal's Motion [Doc. 235] for reconsideration of the Judgment on Pleadings [Doc. 230].

to amend.  *Id*.  It is also clear that permitting the amendments would not have caused the Shaman Parties "undue prejudice."  *Id*.  On January 12, 2022—three weeks after Mr. O'Neal commenced his supplemental proceedings—the Shaman Parties moved [Doc. 158] for a stay of all discovery pending a decision on their pending motion [Doc. 177] for retroactive approval of the Settlement Agreement [Doc. 188-1] and their motion [Doc. 184] for judgment on Mr. O'Neal's pleading.  The magistrate judge granted the Shaman Parties' motion [Doc. 201] and entered a Case Management and Scheduling Order (CMSO) [Doc. 203] providing for an indefinite stay of all discovery until a new CMSO was entered.  That discovery stay remained in place until the magistrate judge entered a new CMSO [Doc. 294] on March 30, 2023—over two (2) months after Mr. O'Neal's substituted motion [Doc. 272] to amend was filed.  There is no evidence suggesting that the Shaman Parties would suffer any harm, let alone "undue prejudice," if the magistrate judge granted Mr. O'Neal leave to amend.  *Id*.

The magistrate judge also incorrectly read the parties' Joint Notice [Doc. 65] as stating that the terms of the agreement had been fully agreed to as of the date the Joint Notice [Doc. 65] was filed.  and then wrongly concluded that Mr. O'Neal's proposed cause of action for recission of the Settlement Agreement

[Doc. 188-1] and affirmative defense of fraudulent inducement to contract were

facially implausible and futile:

> Mr. O'Neal argued this cause of action was important because he 'would have rejected the broad release and assumption of the risk covenants in the [Prior] Settlement Agreement 'had the Shaman Defendants not allegedly fraudulently misrepresented Mr. Carnes's interests. However, ... Mr. O'Neal's rescission claim suffered from severe fatal factual flaws. In essence, Mr. O'Neal's claim of rescission was rooted in the claim that the Shaman Defendants misrepresented franchise interests in American Shaman stores on public Missouri state financial disclosure documents issued on April 30, 2021. Mr. O'Neal claimed he relied on those allegedly fraudulent misrepresentations in agreeing to settle his original claims against the Shaman Defendants.

> However, the parties noticed the Prior Settlement Agreement with the court on April 21, 2021 (Doc. 65), nine days before the issuance of the financial disclosure documents Mr. O'Neal claims he relied upon in entering into the Prior Settlement Agreement]. Nothing in Mr. O'Neal's motion or proposed amended supplemental complaint responded to this factual quandary.

 Amendment Order [273] at pp. 7-6.

The magistrate judge's reading of the language in the Joint Notice [Doc. 65] is incorrect.  The Joint Notice [Doc. 65] recites that the parties "have resolved Plaintiff's claims against the Shaman entities" and "are in the process of drafting a confidential agreement to memorialize the resolution...."  *Id*. at p. 1 (emphasis added).  The negotiation of the Settlement Agreement [Doc. 188-1], including the "the broad release and assumption of the risk covenants," occurred during the three (3) weeks following the filing of the Joint Notice [Doc.

65] and the terms were not fully agreed to until May 14, 2021; and a notice of dismissal [Doc. 72] was filed the same day. The magistrate judge's ruling that Mr. O'Neal's cause of action for recission of the settlement agreement and affirmative defenses of fraudulent inducement to contract are facially implausible and futile is clearly erroneous.

The magistrate judge also determined that "(n)othing in Mr. O'Neal's motion or attached proposed amended supplemental complaint indicated Mr. O'Neal actually returned or made a legible offer to return the $50,000 he received as part of the Prior Settlement Agreement. Mr. O'Neal thus did not adequately plead his claim of rescission." Amendment Order [273] at pp. 9-10. The magistrate judge is again mistaken.

Mr. O'Neal's Proposed Amended Complaint [Doc. 272-2] specifically alleges, at Paragraphs 151 and 152, that Mr. O'Neal informed the Shaman Parties "that he had rescinded the Settlement Agreement [Doc. 188-1]" and "offer[ed] to restore the benefits received" pursuant to the Settlement Agreement [Doc. 188-1]" so that "the conditions of the parties may be restored as the same existed prior to the execution of the [settlement agreement]." *Id.* (brackets added).

The magistrate judge's refusal to allow Mr. O'Neal "at least one opportunity to amend before dismissing with prejudice" his pleadings is an

abuse of discretion, contrary to law, and is due to be reversed. *Environmental Protection,* at *3.

## CONCLUSION

The district court ruled that "there is no statutory basis" for the *Lynn's Food* doctrine and specifically, "no statutory reason to think the FLSA protects non-FLSA claims simply because they are included in a joint settlement." The district court's decision rejects clearly applicable Eleventh Circuit precedent that FLSA settlement agreements must be "scrutinized(ed)" for "fairness" and receive judicial approval to be enforceable as mandated by *Lynn's Food* and its progeny. *Id.* at p. 1353. All district courts must honor the established precedents of this court to maintain consistency, predictability, and the integrity of the judicial system. The district court's decision in this case is clearly erroneous and is due to be reversed.

It is also clear that the district failed to interpret the confidentiality section of the Settlement Agreement [Doc. 188-1] in accordance with it plain meaning and the parties' intent. The district court's failed to interpret the word "clarification" and the following language found in sentence #4 of the confidentiality section in accordance with its plain and ordinary meaning. The "clarification" is not an "exception" to sentence #4 that prohibits disclosure of the confidential information to "anyone" without "prior written notice."

Summary Judgement [Doc. 415] at p. 18.  The Summary Judgement [Doc. 415] is due to be reversed for the additional reason that the district court's construction of the confidentiality section of the Settlement Agreement [Doc. 188-1] is erroneous as a matter of law.

Finally, the magistrate judge's refusal to allow Mr. O'Neal a single opportunity to amend his pleadings is an abuse of discretion and her determination that Mr. O'Neal's cause of action for recission of the Settlement Agreement [Doc. 188-1] and affirmative defenses of fraudulent inducement to contract are facially implausible and futile is plainly erroneous as a matter of law.

/s/ Kevin H. Graham
Florida Bar No. 615986
3159 Lake Ellen Dr., Suite 100
Tampa, FL  33618
Telephone: (813) 240-0107
khgrahamlaw@gmail.com
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This Brief (1) complies with the word limit of Rule 32(a)(7)(B)(i), Fed.R.App.P., because, excluding the parts of the document exempted by Rule 32(f), Fed.R.App.P., and 11th Cir. Rule 32-4, this document contains 12,664 words; and (2) complies with the type-face requirements of Rule 32(a)(5), Fed.R.App.P., and the type-style requirements of Rule 32(a)(6), Fed.R.App.P. because it has been prepared in a proportionally spaced, 14-point, roman style typeface using Microsoft Word *Calisto MT*.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will cause a notice to be served by electronic mail on all counsel on the Service List.

/s/ Kevin H. Graham